UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| DRILL CUTTING DISPOSAL CO. LLC | CIVIL ACTION NO. 15-cv-2532 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| JOSEPH GUTIERREZ and KYLE LYNN | MAGISTRATE JUDGE WHITEHURST |

### MEMORANDUM RULING

Now before the Court is the "Appeal from Magistrate's Order of April 20, 2016" filed by Plaintiff Drill Cutting Disposal Company LLC ("DCDC"). [Record Document 32]. Magistrate Judge Whitehurst's appealed order directs the transfer of the instant matter, an appeal from an arbitrator's order, to the Western District of Texas. Record Document 31. The Magistrate Judge concluded that the Western District of Texas retained exclusive jurisdiction over any appeal from the arbitrator's order when that court dismissed the claims brought by Joseph Gutierrez and Kyle Lynn to arbitration. Id. This Court finds that the Western District of Texas did not retain exclusive jurisdiction over the instant appeal. Nevertheless, this Court concludes that this matter should be transferred to the Western District of Texas under 28 U.S.C. § 1404. Accordingly, the Magistrate Judge's order transferring this case to the Western District of Texas is **AFFIRMED**. The Clerk is **ORDERED** to transfer this case to the Western District of Texas.

## Factual and Procedural Background

This matter originated when Joseph Gutierrez, on behalf of himself and others similarly situated, filed suit in the Western District of Texas, San Antonio Division, Civil Action No. 5:14-cv-0017, alleging that DCDC failed to pay its employees, including Gutierrez, overtime pay as required by the Fair Labor Standards Act ("FLSA").  WDT 1.[1] Kyle Lynn later joined the lawsuit as a plaintiff.  WDT 14.  The parties consented to arbitration of the entire case, and the Western District of Texas issued an order compelling the parties to proceed to arbitration.  WDT 33 and 34.  That order stated that "once arbitration is complete, the Court will have nothing more to do other than conduct a limited judicial review and execute final judgment," and, "[t]herefore, excepting the limited judicial review permitted by the Federal Arbitration Act, Plaintiffs' claims in this case are dismissed with prejudice." WDT 34 (internal quotations omitted).

The parties contested the appropriate venue for the arbitration, Gutierrez and Lynn supporting venue in San Antonio, Texas and DCDC arguing for Lafayette, Louisiana.  Record Documents 22-1; 22-3; 22-4; 22-5.  The AAA administrator found that venue was proper in San Antonio and DCDC appealed that decision.  Record Document 22-2.  The arbitrator assigned to the case denied DCDC's appeal, affirming the selection of San Antonio as the proper forum.  Record Document 22-2.  When the arbitrator denied DCDC's appeal as to arbitration in San Antonio, the arbitrator

---

[1] The factual background related to the Western District of Texas suit is partially derived from that court's docket sheet.  The record from the FLSA case filed in the Western District of Texas is designated as "WDT."

simultaneously issued a Clause Construction Order, concluding that the language used by the arbitration clauses in DCDC's employment agreements permitted Gutierrez and Lynn to proceed as class representatives in a FLSA collective action.  Record Document 6-3, p. 15.  DCDC now seeks to "vacate, modify, or correct" the arbitrator's Clause Construction Order by means of the instant case.  Record Document 1-2.  DCDC's appeal has stayed the arbitration process until the appeal is resolved.  Record Document 1-3, p. 17.

DCDC filed its appeal from arbitration in state court in Lafayette.  Record Document 1-2, p. 3.  The appeal was removed to this federal court by Guttierez and Lynn (collectively "Defendants").[2]  Record Document 1.  Defendants now seek to transfer the case to the Western District of Texas on the grounds that the Western District of Texas retained exclusive jurisdiction over this particular action when it ordered the matter to arbitration.  Record Document 22.  Alternatively, Defendants seek transfer of the case under 28 U.S.C. § 1404.  Id.  The parties briefed both issues.  See Record Documents 22, 24, and 29.  The Magistrate Judge held that the Western District of Texas "reserved jurisdiction" over the case in arbitration and that the instant matter could not be entertained by this Court as it dealt with "substantially the same issues."  Record Document 31, pp. 5–6.  Because of that determination, the Magistrate Judge did not address transfer pursuant to 28 U.S.C. § 1404. Id. at 6 n.4.  DCDC appealed the Magistrate Judge's transfer order.  Record Document 32.  Defendants opposed the

---

[2] The Magistrate Judge has concluded that diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332 existed over this action.  Record Document 20.

appeal from the transfer order.  Record Document 34.  DCDC replied and, with leave of the Court, Defendants filed a surreply. Record Documents 35, 38, and 39.

## Law and Analysis

The question presented by this appeal is whether this Court has jurisdiction to entertain the appeal of an arbitrator's decision when another federal court ordered the arbitration and which, except for purposes of limited review permitted by the Federal Arbitration Act ("FAA"), dismissed the case with prejudice.  If this case remains pending before the Western District of Texas, then this Court should transfer this appeal to the Western District of Texas consistent with the "first to file" rule adhered to by the Fifth Circuit.  See, e.g., West Gulf Mar. Ass'n v. ILA Deep Sea Local 24, 751 F.2d 721, 728 (5th Cir. 1985) ("the principle of comity requires federal district courts . . . to exercise care to avoid interference with each other's affairs."). See also Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co., 529 U.S. 193, 198 (2000) ("under principles of deference to the court of first filing, the Alabama court should have considered staying its hand."). However, if this matter is an "entirely separate action," Green v. Ameritech Corp., 200 F.3d 967, 973 (6th Cir. 2000), with no portion of the same case remaining in the Western District of Texas, then there is no requirement that this Court transfer the instant appeal.

I.    Principles of Deference and Comity

"The 'first to file' rule is grounded in principles of comity and sound judicial administration."  Save Power Ltd. v. Syntek Fin. Corp., 121 F.3d 947, 950 (5th Cir.

1997). When related cases are pending before two judges in the same district or in different districts, "federal courts long have recognized that the principle of comity requires federal district courts–courts of coordinate jurisdiction and equal rank–to exercise care to avoid interference with each other's affairs." West Gulf, 751 F.2d at 728. Duplicative litigation wastes judicial resources, creates piecemeal resolution of issues when those issues call for a uniform result, and produces "rulings which may trench upon the authority of sister courts." Save Power, 121 F.3d at 950. "To avoid these ills, a district court may dismiss [or transfer] an action where the issues presented can be resolved in an earlier-filed action pending in another district court." West Gulf, 751 F.2d at 729.

In order for the "first to file" rule to apply, the parties and issues in the related cases need not be identical. Save Power, 121 F.3d at 950. Rather, "[t]he crucial inquiry is one of 'substantial overlap'" amongst substantive issues. Id. Accordingly, if there is "substantial overlap" between a case pending before the Western District of Texas and the instant appeal from the arbitrator's decision, this Court should transfer the instant appeal to the Western District of Texas because Defendants were the "first to file" their action there.

II.    The Effect of the Western District of Texas Ordering the Parties to Arbitration and Dismissing All Claims With Prejudice

The Magistrate Judge's order transferring this matter to the Western District of Texas is based upon two principal conclusions.[3]  First, the order states that "once a court obtains jurisdiction in an action, that court retains the right to enter judgment on the arbitrator's award which was an outgrowth of the original action."  Record Document 31, p. 4.  Second, the order states that an appeal of an arbitrator's award may only be filed in the court whose district encompasses the location where the arbitrator's award was made.  Id. at 4–5 (citing Tesoro Petroleum Corp. v. Asamera (South Sumatra) Ltd., 798 F. Supp. 400 (W.D. Tex. 1992)).   Based on these two conclusions, the Magistrate Judge ruled that this appeal from arbitration must be filed in the Western District of Texas.  Record Document 31, pp. 5–6.

A.    Retention of Jurisdiction

The Magistrate Judge's first conclusion is based upon precedent inapplicable to the question presently before this Court.  To support the conclusion that the Western District of Texas retained jurisdiction after dismissing the case with prejudice, the Magistrate Judge cited to T & R Enterprises, Inc. v. Cont'l Grain Co., 613 F.2d 1272 (5th Cir. 1980).  The relevant issue before the Fifth Circuit in T & R was whether the parties had empowered the court to enter a judgment on their agreed-to arbitration.  Id. at

---

[3] It is not clear from the language of the order whether the Magistrate Judge considered these conclusions to each independently require the transfer of the case to the Western District of Texas or together to require that result.  However, because this Court disagrees with both conclusions, resolution of this question is inconsequential.

1278.  The appellant in T & R argued that 9 U.S.C. § 9 permits a court to enter

judgment on an arbitration award only when agreed to by the parties, the parties had

not agreed to such a judgment, and thus the district court's confirmation of the

arbitrator's decision was improper.  Id. The Fifth Circuit concluded that jurisdiction to

confirm the award was granted to the district court by the appellant when the appellant

originally filed its complaint in that court.  Id.  Accordingly, the Fifth Circuit held that

jurisdiction was properly exercised by the lower court when it entered a judgment on

the arbitrator's award because doing so was an "outgrowth of the original action" and

thus "sufficient to satisfy the jurisdictional requirements" of 9 U.S.C. § 9.[4]

     T & R dealt with the question of whether the parties had consented to the

jurisdiction of the court for the purposes of post-arbitral proceedings.  In contrast, the

question before this Court is whether the Western District of Texas retained exclusive

jurisdiction over this appeal from arbitration when that court ordered the parties to

proceed to arbitration on all issues before that court.  This Court views these issues as

distinct.  T & R would be relevant if DCDC had filed the instant appeal from arbitration

in the Western District of Texas and then Defendants had objected to that court's

jurisdiction over the appeal.  However, that is not the matter presently in dispute.

Instead, this Court must determine the effect of the Western District of Texas' dismissal

of all claims with prejudice at the time that court sent the parties to arbitration.

---

[4] This decision was cited to as authority for the same limited proposition in a recent, though unpublished, Fifth Circuit opinion.  See Tate v. Carvel, 444 Fed. App'x. 34 (5th Cir. 2011).

B.     The District Encompassing the Location of Arbitration

The Magistrate Judge's second conclusion is that appeals from arbitrators' decisions may only be filed in the court whose district encompasses the location of the arbitration. Record Document 31, pp. 4–5. The law relied upon by the Magistrate Judge for this conclusion, however, was overruled by the United States Supreme Court in 2000.

The case primarily cited by the Magistrate Judge to support this second conclusion is Tesoro, 798 F. Supp. 400. The court in Tesoro was tasked with interpreting the statement in 9 U.S.C. § 10 that the federal district court "in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration." Tesoro concluded that language was restrictive, permitting only the federal court encompassing the place where the award was made to entertain an action seeking to vacate that arbitral award. Id. at 404. The Magistrate Judge's order cites Tesoro in support of this same proposition. Record Document 31, pp. 4–6.

In Cortez, 529 U.S. 193, the Supreme Court was faced with the question of whether the venue provisions contained in 9 U.S.C. §§ 9-11 were permissive or restrictive. In other words, the Court's inquiry was whether the venue provisions of those statutes were the exclusive venues in which appellants from arbitration could bring their suits or if the statutes simply supplemented the general venue provisions of 28 U.S.C. § 1391. The Supreme Court found that the venue provisions of 9 U.S.C. §§

9–11 were permissive, supplementing, not supplanting, the general venue provisions of

28 U.S.C. § 1391.  Id. at 203.  Consequently, the Supreme Court held that appellants

from arbitration may file their appeals under the FAA in a district permitted under 9

U.S.C. §§ 9–11 or in another venue appropriate under 28 U.S.C. § 1391.  Id.  The Court

concluded that if appeals and/or confirmations from an arbitration order are pending

simultaneously in two or more federal courts, each being of proper venue, those actions

should be transferred to the court in which the first appeal or confirmation was filed out

of "principles of deference to the court of first filing."  Id. at 198, 203.  Accordingly,

though the arbitration in the instant case took place in the Western District of Texas,

the Cortez decision makes clear that the parties are not required under the terms of the

FAA to file any appeal arising out of that arbitration in the Western District of Texas.

See, e.g., Textile Unlimited, Inc. v. A..BMH and Co., Inc., 240 F.3d 781, 784 (9th Cir.

2001) ("As the Supreme Court has recently explained, the FAA's venue provisions are

discretionary, not mandatory.").

C.    The Lingering Effects of an Order Compelling Arbitration and Dismissing
      All Claims with Prejudice

Though this Court is not persuaded that the holdings of T & R and Tesoro permit

DCDC's appeal to be filed only in the Western District of Texas, those conclusions do

not answer the question of how an order compelling arbitration and dismissing all

claims with prejudice may affect a subsequent court's jurisdiction over an appeal from

arbitration.  The Sixth Circuit has stated that "it is certainly true that dismissal with

prejudice of a plaintiff's discrimination claims has no effect upon a subsequent

challenge to an arbitrator's ruling, which is an entirely separate action." <u>Green</u>, 200 F.3d at 973. Once a court sends the parties to arbitration, leaving "no pending proceeding in the district court" because the court dismissed all claims before it with prejudice, a party's appeal from arbitration is an entirely new action. <u>Id.</u> To justify filing this entirely new action in federal court, the appealing party may not piggyback subject matter jurisdiction off of the previously-dismissed action, but must establish it anew in the court where the challenge is lodged. <u>Id.</u> In short, a court that dismisses all claims before it with prejudice when sending a matter to arbitration does not maintain a lingering grip on issues which may develop during that arbitration. This Court concludes that when a district court finds that all of the issues raised before it must be submitted to arbitration and thus compels the parties to proceed to arbitration, dismissing with prejudice all of the plaintiff's claims, any subsequent appeal from that arbitration is a new and separate action.

The Western District of Texas' order stated that the claims involved were dismissed with prejudice. WDT 34. The order quoted <u>Lauzon v. Pulte Homes, Inc.</u>, 2012 WL 5381703, at *1 (W.D. Tex. Oct. 31, 2012) for the statement that "once arbitration is complete, the Court will have nothing more to do other than conduct a limited judicial review and execute final judgment." WDT 34. Thereafter, the Western District of Texas dismissed the case with prejudice, except for purposes of the limited judicial review permitted by the FAA. <u>Id.</u> In light of the precedent cited above, this Court understands that the Western District of Texas' order was not intended to

maintain exclusive control over any appeals from arbitration. Rather, the order was intended to make clear that future judicial remedies permitted by the FAA for these arbitrated claims would not be foreclosed by the court's dismissal of those claims with prejudice.

The instant appeal is "an entirely separate action" from the complaint originally filed with the Western District of Texas. No compelling argument has been presented to this Court that it is barred from exercising jurisdiction over this present appeal because of either a simultaneous action in the Western District of Texas or a lack of subject matter jurisdiction. Accordingly, this Court concludes that the Magistrate Judge's decision that the Western District of Texas retained exclusive jurisdiction over this instant appeal from arbitration is incorrect.

III.    Transfer under 28 U.S.C. § 1404

Defendants assert in their Motion To Transfer Venue to the Western District of Texas that if this Court possessed jurisdiction over the appeal from the arbitrator's order, then this Court should still transfer venue to the Western District of Texas on the basis of 28 U.S.C. § 1404. Record Document 22-1, pp. 5–10. The Magistrate Judge did not reach this question, having concluded that this Court did not have jurisdiction over this appeal. Record Document 31, p. 6 n.4. The parties briefed this issue before the Magistrate Judge, and additional briefing is not necessary. See Record Documents 22-1, 24, 29. This Court may affirm the Magistrate Judge's decision on any ground raised below and supported by the record, even if the Magistrate Judge did not reach the

question. See, e.g., Gilbert v. Donahoe, 751 F.3d 303, 311 (5th Cir. 2014) ("Under our precedent, we may affirm on any ground supported by the record, including one not reached by the district court.") (internal quotations omitted). See also Ordemann v. Unidentified Party, 2008 WL 695253, *3 (E.D. La. Mar 12, 2008) ("[t]his Court is not limited to consideration of the grounds discussed by the Magistrate; rather, it may affirm the underlying decision on any ground sustainable in the record.").

    A.    Legal Standard

28 U.S.C. § 1404 provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." For § 1404 analyses, the Fifth Circuit has adopted the private and public interest factors outlined by the Supreme Court for use in *forum non conveniens* cases. See In re Volkswagen of Am., Inc., 545 F.3d 304, 314–15 (5th Cir. 2008) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508–09 (1947)). However, the moving party in a § 1404 case has a lower burden than does a party appealing to the traditional *forum non conveniens* doctrine. Id. The moving party is simply required to show that the transfer is "clearly more convenient" than the present venue chosen by the plaintiff. Id. at 315. District courts have "'broad discretion in deciding whether to order a transfer.'" Id. at 311 (quoting Balawajder v. Scott, 160 F.3d 1066, 1067 (5th Cir. 1998)).

B.    The Private Interest Factors

The private interest factors are: "(1) the relative ease of access to sources of

proof; (2) the availability of compulsory process to secure the attendance of witnesses;

(3) the cost of attendance for willing witnesses; and (4) all other practical problems that

make trial of a case easy, expeditious and inexpensive." Id. at 315 (internal quotations

and citations omitted).

Defendants state that San Antonio, Texas, is 9% closer to the present locations

of the parties than is Lafayette, Louisiana.  Record Document 22-1, p. 12.  To reach this

figure, Defendants calculated the distances between the locations of the federal

courthouses in Lafayette and San Antonio, relative to the respective locations of

Gutierrez, Lynn, and DCDC.  Id. at 11 n.5.  DCDC argues that these calculations provide

an inaccurate picture because they do not reflect a multitude of witnesses from the

Lafayette, Louisiana, area who may need to testify as to their own interpretations of the

meaning of the clause in dispute.  Record Document 24, pp. 8–10.  DCDC's argument is

based upon the assumption that its appeal presents a broad question that will

necessitate the testimony of numerous witnesses and the examination of voluminous

evidence regarding the proper interpretation of the disputed clause.  However,

testimony from various employees as to their own interpretation of the disputed clause

is unlikely to be relevant to the narrow question presented on appeal.  See BNSF Ry.

Co. v. Alstom Transp. Inc., 777 F.3d 785, 787–88 (5th Cir. 2015) ("[T]he Supreme

Court has made clear that district courts' review of arbitrators' awards under [9 U.S.C.]

§ 10(a)(4) is limited to the sole question of whether the arbitrator (even arguably) interpreted the parties' contract.") (internal quotations omitted).

DCDC's appeal is based solely upon its assertion that the arbitrator violated 9 U.S.C. § 10(a)(4) by going beyond his powers when he interpreted the meaning of the disputed clause in the contract between DCDC and Defendants.  Record Document 1-2, pp. 3–7; Record Document 9.  A district court's review under § 10(a)(4) of an arbitrator's award "is limited to the 'sole question . . . [of] whether the arbitrator (even arguably) interpreted the parties' contract.'" BNSF Ry. Co., 777 F.3d at 788 (quoting Oxford Health Plans LLC v. Sutter, 133 S. Ct. 2064, 2068 (2013)).  Therefore, the question posed by DCDC's appeal is not "whether [the arbitrator] got [the clause's] meaning right or wrong," as DCDC appears to assume.  Oxford Health, 133 S. Ct. at 2068. See also BNSF Ry. Co., 777 F.3d at 787–88.  Rather, the question is a much narrower one. The question presented by DCDC's appeal is whether the arbitrator exceeded his authority by not interpreting the parties' contract at all. Id. at 788.  Understanding the limited scope of the inquiry presented by DCDC's appeal is necessary because the scope of that question determines which evidence is relevant, the witnesses needed, and other practical considerations for purposes of this § 1404 convenience analysis.

In order to decide whether the arbitrator even arguably interpreted the parties' contract or if he exceeded his authority, the court must examine the arbitrator's decision itself.

> In determining whether the arbitrator exceeded her authority, district courts should consult the arbitrator's award itself. The award will often suggest on its face that the arbitrator was arguably interpreting the contract. Several pieces of relevant evidence can be gleaned from the award's text, including but not limited to: (1) whether the arbitrator identifies her task as interpreting the contract; (2) whether she cites and analyzes the text of the contract; and (3) whether her conclusions are framed in terms of the contract's meaning.

BNSF Ry. Co., 777 F.3d at 788.  The inquiry will not necessitate, as DCDC seems to envision, the presiding court to entertain a substantial amount of witness testimony as to those witnesses' own interpretations of the clause at issue.[5]  Id.

The arbitration proceedings are located in San Antonio, Texas, the AAA administrator and appointed arbitrator having decided that San Antonio was the most appropriate location for arbitration using factors substantially similar to those used in the present 28 U.S.C. § 1404 analysis.[6]  See Record Documents 22-2; 22-6.  Given that the arbitration is presently located in San Antonio, any evidence as to those proceedings is likely to be most easily accessible there.  See Esso Expl. and Prod. Chad, Inc. v. Taylors Int'l Serv. Ltd., 2006 WL 1544516, at *3 (S.D. Tex. June 1, 2006) (finding that because the arbitration was conducted in New York, the private interest factors weighed in favor of a transfer to the Southern District of New York).  San Antonio is also more

---

[5] "[A] party challenging an arbitration award [under § 10(a)(4)] need not adduce hard-to-obtain evidence concerning the arbitrators' true intent. At the same time, in evaluating the available evidence, the district courts must resolve all doubts in favor of arbitration." BNSF Ry. Co., 777 F.3d at 788.

[6] The factors analyzed by the AAA administrator before deciding upon the location for arbitration are: (1) the location of the parties, (2) the location of witnesses and documents, (3) the location of site or place or materials, (4) the consideration of relative cost to the parties, (5) the place of performance of contract, (6) the laws applicable to the contract, (7) the place of previous court actions, (8) the necessity of an on-site inspection of the project, and (8) any other reasonable arguments that might affect the locale determination.  Record Document 22-6.

accessible to the parties than is Lafayette. See Record Document 22-1. Additionally, there is no evidence that continued litigation in this Court offers any practical advantages for the easy, expeditious and inexpensive resolution of this appeal.

The private interest factors relating to the ease of access to sources of proof and the cost of attendance for witnesses weigh in favor of transfer to the Western District of Texas. Accordingly, this Court finds that the private interest factors clearly demonstrate that the Western District of Texas is the best venue for this litigation.

C.    The Public Interest Factors

The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." In re Volkswagen of Am., Inc., 545 F.3d at 315 (internal quotations and citations omitted). The public interest factors do not weigh in particular favor of litigation in either the Western District of Texas or this Court.

As to the first factor, the parties' briefing does not indicate that there are administrative difficulties which may arise from a transfer of venue to the Western District of Texas or from the matter remaining with this Court. For the second public interest factor, there is no indication that a distinct local interest exists in either forum for resolving the question of whether the arbitrator actually interpreted the clause at issue or went beyond his authority. The fourth public interest factor is not relevant to

the instant matter.

As to the third public interest factor, DCDC argues that "it cannot be seriously argued that the interest of justice would be better served by a non-Louisiana court" reviewing an arbitral decision regarding a "Louisiana contract."  Record Document 24, p. 8.  As stated above, the inquiry before this Court under 9 U.S.C. § 10(a)(4) is not whether the arbitrator interpreted the contract under Louisiana law correctly, but whether he interpreted the contract at all.  The Court is not aware of, and the parties have not demonstrated the existence of, any particular Louisiana law or legal theory applicable to the instant appeal of which a Louisiana-based court would have unique knowledge or experience.  This Court concludes, therefore, that the inquiry into whether the arbitrator exceeded his authority and did not interpret the relevant contractual clause will not be especially aided through any special knowledge of, or experience in, Louisiana law.  Accordingly, the Court finds that the public interest factors do not point towards any particular forum as the most convenient for this appeal from arbitration ongoing in San Antonio.

While the traditional public interest factors do not weigh in favor of any particular forum, the Court does note the consequence of ignoring the Defendants' original choice of forum for this litigation.  As stated previously, Defendants to this instant appeal originally filed their FLSA action in the Western District of Texas, which was then sent to arbitration by consent of the parties.  This Court has jurisdiction over the instant appeal from arbitration. However, to entertain this matter in this Court would permit a

defendant in a lawsuit in the Western District of Texas to consent to arbitration that takes places within the Western District of Texas and then, by appealing an arbitrator's decision during the course arbitration, relocate the case anew on its home turf in the Western District of Louisiana, bypassing the original plaintiff's legitimate choice of forum. Such a result would amount functionally to a transfer of venue without going through the rigors of 28 U.S.C. § 1404(a), undermining the purpose of that statute.

      D.    The More Convenient Forum

The private and public interest factors show no advantages to this litigation remaining in this Court. However, the private interest factors show that there are advantages to transferring this litigation to the Western District of Texas. Though DCDC selected a Louisiana court for its appeal and such a selection should be given some weight, in light of the considerations above, the Court concludes that Defendants have met their burden of showing that transfer to the Western District of Texas is "clearly more convenient" than continued litigation in this Court. A transfer under 28 U.S.C. § 1404 is warranted.

IV.    Conclusion

This Court finds that the Western District of Texas did not retain exclusive jurisdiction over this instant appeal. Nevertheless, this Court concludes that this matter should be transferred to the Western District of Texas under 28 U.S.C. § 1404. Accordingly, the Magistrate Judge's order transferring this case to the Western District of Texas is **AFFIRMED**. The Clerk is **ORDERED** to transfer this case to the Western

District of Texas.

THUS DONE AND SIGNED in Shreveport, Louisiana, this the _____ day of

August, 2016.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE